R.D. MASONRY, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Scott Hunter, Appellee).

First District (Industrial Commission Division)    No. 1—03—0961WC

Opinion filed May 26, 2004.—Rehearing denied July 16, 2004.

Rusin, Patton, Maciorowski & Friedman, of Chicago, for appellant.

Corti, Freeman & Aleksy, of Chicago (Richard E. Aleksy and Molly C. Mason, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

R.D. Masonry, Inc. (R.D.), appeals from an order of the circuit court confirming a decision of the Industrial Commission (Commission), awarding the claimant, Scott Hunter, benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)). For the reasons that follow, we reverse and remand this matter to the Commission with directions.

The procedural history and facts pertinent to a resolution of this appeal are as follows.

The claimant filed an application for adjustment of claim under the Act seeking benefits for injuries he alleged that he received on August 21, 1998, while in the employ of R.D. Subsequent to the filing of the claimant's application for adjustment of claim, R.D. requested that he be examined by Dr. Avi Bernstein pursuant to the provisions of section 12 of the Act (820 ILCS 305/12 (West 1998)). That examination was conducted on December 14, 1998.

On March 30, 1999, following a hearing conducted pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 1998)), an arbitrator filed a decision, finding, *inter alia*, that: the claimant sustained accidental injuries on August 21, 1998, arising out of and in the scope of his employment with R.D.; a causal relationship existed between the claimant's condition of ill-being and his work-related accident; and the claimant's average weekly wage for purposes of calculating benefits under the Act was $1,077.74. The arbitrator further found that the claimant was temporarily and totally disabled from August 31, 1998, through the date of the hearing on March 15, 1999, and awarded the claimant temporarily total disability (TTD) benefits for a total of 28 1/7 weeks. In deciding to award the claimant TTD benefits only through the date of the hearing, the arbitrator specifically found Dr. Bernstein's opinions to be "non-persuasive." Finally, the arbitrator awarded the claimant the sum of $793.09 for necessary medical expenses, but denied his request for an award of penalties against R.D.

R.D. sought a review of the arbitrator's March 30, 1999, decision before the Commission. While a review of that decision was pending,

an adjuster representing R.D.'s insurance carrier sent a letter to the claimant's attorney on May 19, 1999, requesting that the claimant be reexamined by Dr. Bernstein on May 27, 1999. The claimant did not attend the appointment. The claimant testified that he was not aware that any appointment had been scheduled and denied that his attorney ever told him that an appointment had been scheduled. The claimant's attorney, however, stated on the record that he instructed the claimant not to attend the examination. On May 28, 1999, the adjuster sent a second letter to the claimant's attorney offering to reschedule the claimant's appointment with Dr. Bernstein. On June 3, 1999, the claimant's attorney directed a letter to the adjuster stating that the claimant would not attend any examination until R.D. paid the benefits awarded by the arbitrator in her March 30, 1999, decision.

On June 24, 1999, the Commission issued a decision modifying the arbitrator's calculation of the claimant's average weekly wage to $1,020.35. In all other respects, however, the Commission affirmed and adopted the arbitrator's decision.

R.D. filed an action for judicial review of the Commission's decision of June 24, 1999, in the circuit court of Cook County. The circuit court determined that the claimant's average weekly wage was $1,047.50, and recalculated the weekly TTD benefits to which he was entitled. The circuit court confirmed the Commission's decision in all other respects. R.D. appealed and, on December 21, 2000, this court affirmed the judgment of the circuit court. *R.D. Masonry, Inc. v. Industrial Comm'n*, No. 1—00—0614WC (2000) (unpublished order under Supreme Court Rule 23) (hereinafter referred to as *R.D. Masonry I*).

In January 2001, after this court issued its decision in *R.D. Masonry I*, R.D. paid the first section 19(b) award with interest in the sum of $23,423.82. At that same time, R.D. also paid the claimant additional TTD benefits in the sum of $7,282.58 for the period from March 16, 1999, through May 27, 1999. However, R.D. declined to pay the claimant any TTD benefits for the period subsequent to May 27, 1999, by reason of his having refused to submit to the medical examination scheduled for that date.

On remand, the matter came before an arbitrator for a second section 19(b) hearing. Subsequent to that hearing, on June 29, 2001, the arbitrator issued a decision, finding that the claimant was entitled to an award of additional TTD benefits for the period from March 16, 1999, through May 27, 1999. However, by reason of the claimant's failure to attend a section 12 medical examination (see 820 ILCS 305/12 (West 1998)) scheduled by R.D. for May 27, 1999, the arbitrator

found that the claimant was not entitled to any benefits for the period subsequent to that date. The arbitrator also awarded the claimant an additional $237.65 for medical expenses, but again denied his request for penalties.

The claimant sought a review of the arbitrator's June 29, 2001, decision before the Commission. On March 5, 2002, the Commission, with one commissioner dissenting, issued a decision modifying the arbitrator's decision and awarding the claimant TTD benefits for the period of March 16, 1999, through February 1, 2001, the date the claimant was released to return to work. In its decision, the Commission, relying upon this court's decision in *Fencl-Tufo Chevrolet, Inc. v. Industrial Comm'n*, 169 Ill. App. 3d 510, 523 N.E.2d 926 (1988), held that the claimant was not required to attend the medical examination scheduled by R.D. for May 27, 1999, and, as a consequence, his benefits were not subject to suspension under section 12 of the Act. The Commission rested its decision in this regard upon the fact that R.D. was contesting the claimant's right to receive benefits under the Act and had not paid him any such benefits at the time it requested the examination on May 27, 1999. Although the Commission held that the claimant was not required to attend the scheduled medical examination, it specifically found that, because the claimant's need for further treatment and his work status as of May 1999 were not known, R.D.'s demand for a second medical examination of the claimant was for a proper purpose and not for the purpose of harassing him. Finally, the Commission denied the claimant's petition for an award of penalties.

R.D. sought a judicial review of the Commission's March 5, 2002, decision in the circuit court of Cook County. The circuit court confirmed the Commission's decision, and this appeal followed.

R.D. argues on appeal that the Commission's determination that the claimant was not required to attend the medical examination that it scheduled for May 27, 1999, is contrary to law and that the Commission erred in awarding the claimant TTD benefits for the period subsequent to that date. R.D. requests that we reverse the judgment of the circuit court and hold that the claimant's conduct in refusing to attend the scheduled examination was in violation of section 12 of the Act, resulting in a suspension of his right to receive benefits after May 27, 1999.

Section 12 of the Act governs medical examinations and provides in relevant part as follows:

"An employee entitled to receive disability payments shall be required, if requested by the employer, to submit himself, at the expense of the employer, for examination to a duly qualified medical practitioner or surgeon selected by the employer, at any time

and place reasonably convenient for the employee, either within or without the State of Illinois, for the purpose of determining the nature, extent and probable duration of the injury received by the employee, and for the purpose of ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this Act. ***

* * *

If the employee refuses so to submit himself to examination or unnecessarily obstructs the same, his right to compensation payments shall be temporarily suspended until such examination shall have taken place, and no compensation shall be payable under this Act for such period." 820 ILCS 305/12 (West 1998).

In this case, the Commission concluded that the claimant was not required to submit to the medical examination scheduled by R.D. for May 27, 1999. According to the Commission, at the time that R.D. requested the examination, it had not agreed to pay benefits to the claimant, was appealing the arbitrator's finding as to liability and was withholding the payment of TTD benefits pending the outcome of that appeal and, as a consequence, the claimant "did not know whether he was 'entitled to receive benefits.'" The Commission seems to imply that, before a claimant is required to submit to a section 12 examination, he must know that he is entitled to receive benefits. However, we find no authority for such a conclusion either in the language of section 12 or any reported case.

■ Section 12 of the Act requires an employee "entitled to receive disability payments" to submit, at his employer's request, to a physical examination. As our supreme court held in *Jackson Coal Co. v. Industrial Comm'n*, 295 Ill. 18, 20-21, 128 N.E. 813 (1920):

"It is not restricted to cases where the employer acknowledges his liability and makes compensation payments. It applies to all cases where the employee is entitled to receive disability payments, and whether he is entitled to them is not dependent on whether the employer acknowledges liability by making the payments."

See also *Paradise Coal Co. v. Industrial Comm'n*, 301 Ill. 504, 507, 134 N.E. 167 (1922).

The Commission's reliance upon this court's holding in *Fencl-Tufo Chevrolet, Inc.* is misplaced because that case is readily distinguishable on its facts. Fencl-Tufo Chevrolet, Inc. (Fencl-Tufo), the employer, unilaterally suspended the claimant's TTD benefits after it received a report from an investigator that she had observed the claimant playing golf. Despite the suspension of benefits, the claimant submitted to a section 12 examination by Dr. Grin, a physician selected by Fencl-Tufo. Dr. Grin admitted the claimant to a hospital for three days for a

lumbar myelogram, the results of which were inconclusive. Upon discharge, the claimant was advised not to return to work and to contact Dr. Grin in one to two weeks. When the claimant called as instructed, he was told to recontact Dr. Grin in six months for a follow-up appointment. Within three months thereafter, however, Fencl-Tufo requested that the claimant be examined by a different physician, Dr. Dupre. At that time, Fencl-Tufo was still not paying the claimant any TTD benefits. The claimant failed to attend the examination scheduled with Dr. Dupre. *Fencl-Tufo Chevrolet, Inc.*, 169 Ill. App. 3d at 516. In affirming the judgment of the circuit court which confirmed the Commission's award of benefits to the claimant despite his having failed to submit to an examination by Dr. Dupre, we held:

> "Claimant argues that under these circumstances there was little to gain from attending Dr. Dupre's examination. We thoroughly agree. It is apparent to us that respondent [Fencl-Tufo] was proceeding in a manner that did not warrant compliance [with section 12 of the Act]. Accordingly, we find that when, as here, an employer has arbitrarily suspended payments, and [the employee] has already complied with one requested examination, the claimant's failure to attend a further examination does not violate section 12." *Fencl-Tufo Chevrolet, Inc.*, 169 Ill. App. 3d at 516.

In this case, unlike the facts in *Fencl-Tufo Chevrolet, Inc.*, R.D. had not "arbitrarily" suspended the payment of any benefits to the claimant. It is true that R.D. was not making TTD payments to the claimant at the time that it requested the second section 12 examination, which the claimant refused to attend, and did not make any such payments until after this court had affirmed the circuit court's judgment, confirming the Commission's determination that he was entitled to TTD benefits. However, the Commission twice denied the claimant's request for an award of penalties by reason of R.D.'s failure to make voluntary payments. Nothing in this record would support a finding that R.D. was acting arbitrarily.

Additionally, in this case, the Commission specifically found that R.D. requested the second examination for a proper purpose; namely, to determine the claimant's need for further treatment and his work status. Whereas, in *Fencl-Tufo Chevrolet, Inc.*, we found that there would have been little to gain by the claimant attending Dr. Dupre's examination. We are mindful that the circuit court in this case found that neither party "had anything to gain from a reexamination" of the claimant. However, whether or not a second examination would have been for a proper purpose is a factual question to be determined by the Commission, not the circuit court. See *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980) (It is the function

of the Commission to decide questions of fact and its findings will not be disturbed on appeal unless against the manifest weight of the evidence). We do not find that the Commission's determination in this regard is against the manifest weight of the evidence as the claimant had clearly not reached maximum medical improvement at the point in time when R.D. requested the second examination and he was still receiving medical treatment.

At the time R.D. requested that the claimant be examined on May 27, 1999, he was an "employee entitled to receive disability payments" within the meaning of section 12 of the Act. Further, as the Commission found, R.D.'s request for a second examination was for a proper purpose and not done to harass the claimant. See *King v. Industrial Comm'n*, 189 Ill. 2d 167, 176, 724 N.E.2d 896 (2000). Nevertheless, the claimant argues that he was still not required to attend the examination as R.D.'s request was not accompanied by an advance of travel expenses and the examination was not scheduled for a convenient time as he was still undergoing physical therapy. See *Navistar International Transportation Corp. v. Industrial Comm'n*, 331 Ill. App. 3d 405, 412, 771 N.E.2d 35 (2002). However, as R.D. points out, the claimant never made such arguments before the Commission or the circuit court and there exists no factual support for these assertions in the record before us. Consequently, the claimant cannot now rely on the arguments to justify his failure to attend the scheduled examination as arguments not made before the Commission or the circuit court are waived for purposes of appeal. *Anders v. Industrial Comm'n*, 332 Ill. App. 3d 501, 509, 773 N.E.2d 746 (2002).

Having determined that the claimant was an "employee entitled to receive disability payments" within the meaning of section 12 of the Act at the time of R.D.'s request that he be examined on May 27, 1999, and that he had no valid reason to refuse to comply with the request, we hold that the Commission erred, as a matter of law, in awarding the claimant benefits for the period from May 28, 1999, through February 1, 2001. When, as in this case, an employee refuses to submit to a request for a medical examination made pursuant to section 12 of the Act, his "right to compensation payments shall be temporarily suspended until such examination shall have taken place, and no compensation shall be payable under [the] Act for such period." 820 ILCS 305/12 (West 1998).

For the foregoing reasons, we reverse the judgment of the circuit court confirming the Commission's decision and remand this matter to the Commission with directions that it issue a decision in compliance with the views expressed herein and reinstate the arbitrator's

decision limiting the claimant to TTD benefits for the period from March 16, 1999, through May 27, 1999.

Reversed and remanded to the Industrial Commission with directions.

McCULLOUGH, P.J., and CALLUM and HOLDRIDGE, JJ., concur.

JUSTICE GOLDENHERSH dissenting:

I respectfully dissent.

The Commission was correct in its decision based on *Fencl-Tufo Chevrolet, Inc.*, and the attempt of the majority to distinguish *Fencl-Tufo Chevrolet, Inc.* rests on distinctions without a difference. It is clear in the evidence that R.D. was contesting the claimant's right to receive benefits and had not paid claimant benefits at the time of the requested second examination. As in *Fencl-Tufo Chevrolet, Inc.*, at the time of the scheduled second examination, the employer was not paying benefits. The core of the *Fencl-Tufo Chevrolet, Inc.* decision is stated in the following two paragraphs:

> "In October 1985, respondent requested that claimant be examined by Dr. James Dupre. At this time, respondent still was not paying him temporary total disability. Claimant failed to attend an examination set for October 28, 1985.
>
> Claimant argues that under these circumstances there was little to gain from attending Dr. Dupre's examination. We thoroughly agree. It is apparent to us that respondent was proceeding in a manner that did not warrant compliance. Accordingly, *we find that when, as here, an employer has arbitrarily suspended payments, and a claimant has already complied with one requested examination, the claimant's failure to attend a further examination does not violate section 12.*" (Emphasis added.) *Fencl-Tufo Chevrolet, Inc.*, 169 Ill. App. 3d at 516, 523 N.E.2d at 931.

This conclusion, so succinctly stated in *Fencl-Tufo Chevrolet, Inc.*, applies equally to the instant case.

The requirement to attend an examination rests upon the status of an "employee entitled to receive disability payments." Both in *Fencl-Tufo Chevrolet, Inc.* and the instant case, that entitlement was at issue at the time of the proposed second examination, vigorously contested by the employer, and not, in fact, being paid. The point made by the majority resting on the Commission's finding that failure of the employer in the instant case to pay benefits was not for the purpose of harassment is not relevant to section 12 as it reads into section 12 a requirement for refusing second examinations that is not

present in the statute. The Commission and this court have seen multiple instances in which the entitlement to benefits has been legitimately at issue and not withheld for purposes of harassment or other improper purposes. The determination of the Commission that the request was made for a proper purpose and the denial by the Commission of an award of penalties are legitimate issues, but not related to a determination of the appropriateness of claimant to refuse a second examination under section 12. They are, as stated previously, distinctions without a difference. The majority further presupposes that claimant was an employee entitled to receive disability payments under section 12, when that very status was at issue and said payments had been refused. In effect, we would be assuming the existence of a status which was actually at issue and not resolved, either by finding of an arbitrator, the Commission, or a circuit court, or by agreement of the parties reading the plain language of section 12 and our decision in *Fencl-Tufo Chevrolet, Inc.* This is not a sufficient basis upon which to suspend payment of benefits.

For the reasons stated above, I would affirm the order of the circuit court confirming the Commission's decision.