(No. 98990.—

R.D. MASONRY, INC., Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Scott Hunter, Appellant).

*Opinion filed May 19, 2005.*

Richard E. Aleksy and Mary J. McNichols, of Corti, Freeman & Aleksy, of Chicago, for appellant.

Mark P. Rusin, of Rusin, Maciorowski & Friedman, Ltd., of Chicago, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The main issue presented by this appeal is whether claimant was an "employee entitled to receive disability benefits" within the meaning of section 12 of the Workers' Compensation Act (the Act) (820 ILCS 305/12 (West 1998)), so that he was required to submit to an employer-requested medical examination to avoid suspension of benefits. We answer in the affirmative.

## BACKGROUND

Claimant, Scott Hunter, filed an application for adjustment of claim to recover benefits for a back injury he allegedly sustained while working for R.D. Masonry (Masonry) on August 21, 1998. Masonry disputed the claim and requested that claimant be examined by Dr. Avi Bernstein pursuant to section 12 of the Act. On December 14, 1998, claimant was examined by Dr. Bernstein, and the cause proceeded to a hearing before an arbitrator on March 15, 1999. The arbitrator awarded claimant temporary total disability (TTD) benefits from August 31, 1998, through March 15, 1999, finding Dr. Bernstein's report unpersuasive.

Thereafter, Masonry filed for review of the arbitrator's decision to the Industrial Commission (Commission). While review was pending before the Commission, Masonry's insurance carrier sent a letter to claimant's attorney on May 19, 1999, requesting that claimant be examined by Dr. Bernstein on May 27, 1999. The claimant did not attend the appointment. Claimant testified that his attorney never told him of the scheduled appointment so he was unaware of it. But claimant's attorney testified that he instructed claimant not to attend the examination.

On May 28, 1999, Masonry's insurance carrier sent another letter to claimant's attorney offering to reschedule an appointment with Dr. Bernstein. Claimant's at-

torney responded with a letter on June 3, 1999, informing the insurer that his client would not attend any examination until Masonry complied with the arbitrator's decision.

On June 24, 1999, the Commission modified the arbitrator's calculation of claimant's average weekly wage, but otherwise affirmed the arbitrator's decision. Masonry filed for judicial review of the Commission's decision in the circuit court of Cook County. The circuit court recalculated claimant's average weekly wage, but confirmed the remainder of the Commission's decision. Masonry appealed, and on December 21, 2000, the appellate court affirmed the circuit court's decision.

In January 2001, Masonry paid claimant $23,423.82, which covered the TTD award through March 15, 1999, plus interest. Masonry also paid claimant an additional $7,282.58 for TTD benefits for the period running from March 16, 1999, through May 27, 1999. Masonry, however, did not pay any benefits for the period after May 27, 1999, the date of the scheduled medical examination that claimant refused to attend.

Claimant then filed another petition before the arbitrator, this time requesting TTD benefits for the period after May 27, 1999. The arbitrator found, however, that claimant was not entitled to benefits after May 27, 1999, because he refused to attend the scheduled medical examination pursuant to section 12 of the Act, which requires "[a]n employee entitled to receive disability payments" to submit himself or herself to a medical examination if requested by the employer. See 820 ILCS 305/12 (West 1998). Accordingly, the arbitrator entered an order awarding claimant TTD for the period from March 16, 1999, through May 27, 1999.

The Commission, with one commissioner dissenting, ruled that because Masonry was not making TTD payments to claimant at the time of the medical examina-

tion scheduled for May 27, 1999, claimant was not "an employee entitled to receive benefits" within the meaning of section 12, and claimant was therefore not required to attend the examination. Consequently, claimant's right to receive benefits was not subject to suspension under section 12. The Commission further found, however, that because claimant's need for further treatment and his work status were unknown, Masonry's demand for the second medical examination was for a proper purpose and not for harassment. Finally, the Commission denied claimant's request for penalties, finding that Masonry's conduct was objectively reasonable. The circuit court confirmed the decision of the Commission.

The appellate court, with one member of the five-justice panel dissenting, reversed the circuit court's confirmation of the Commission's ruling that claimant was not required to submit to a medical examination. 349 Ill. App. 3d 752, 758. The appellate court found that the Commission had misconstrued section 12 of the Act, noting as follows:

"According to the Commission, at the time that [Masonry] requested the examination, it had not agreed to pay benefits to the claimant, was appealing the arbitrator's finding as to liability and was withholding the payment of TTD benefits pending the outcome of that appeal and, as a consequence, the claimant 'did not know whether he was "entitled to receive benefits." ' The Commission seems to imply that, before a claimant is required to submit to a section 12 examination, he must know that he is entitled to receive benefits. However, we find no authority for such a conclusion either in the language of section 12 or any reported case.

Section 12 of the Act requires an employee 'entitled to receive disability payments' to submit, at his employer's request, to a physical examination. As our supreme court held in *Jackson Coal Co. v. Industrial Comm'n*, 295 Ill. 18, 20-21, 128 N.E. 813 (1920):

'It is not restricted to cases where the employer

acknowledges his liability and makes compensation payments. It applies to all cases where the employee is entitled to receive disability payments, and whether he is entitled to them is not dependent on whether the employer acknowledges liability by making the payments." See also *Paradise Coal Co. v. Industrial Comm'n*, 301 Ill. 504, 507, 134 N.E. 167 (1922).' " 349 Ill. App. 3d at 756.

The appellate court remanded the cause to the Commission to reinstate the arbitrator's decision limiting claimant's TTD benefits to the period ending May 27, 1999. 349 Ill. App. 3d at 758-59. Two justices of the panel certified that the case involved a substantial question that warrants consideration by this court. We subsequently allowed claimant's petition for leave to appeal (177 Ill. 2d R. 315(a)).

## ANALYSIS

Claimant initially argues that the Commission made a factual finding as to whether he was an "employee entitled to receive benefits," and therefore its ruling is subject to the manifest weight of the evidence standard of review. We disagree. The essential facts are undisputed and the matter before us is solely a matter of statutory construction. Accordingly, the case presents a question of law that we review *de novo. Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001).

Claimant argues that if an employer places an employee's entitlement to receive benefits in dispute by challenging liability, then the employer loses the right to rely on the examination requirement and suspension-of-benefits remedy provided by section 12. Claimant maintains that because Masonry challenged his right to compensation and was not making any disability payments to him at the time it requested the exam in May 1999, Masonry was not within its rights to either request an exam or suspend compensation for failure to comply with the request to attend.

Section 12 provides in relevant part as follows:

"An employee entitled to receive disability payments shall be required, if requested by the employer, to submit himself, at the expense of the employer, for examination to a duly qualified medical practitioner or surgeon selected by the employer, at any time and place reasonably convenient for the employee, either within or without the State of Illinois, for the purpose of determining the nature, extent and probable duration of the injury received by the employee, and for the purpose of ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this Act. ***

\* \* \*

If the employee refuses so to submit himself to examination or unnecessarily obstructs the same, his right to compensation payments shall be temporarily suspended until such examination shall have taken place, and no compensation shall be payable under this Act for such period." 820 ILCS 305/12 (West 1998).

The principles to be applied in construing a statute are well settled. Our primary goal is to ascertain and give effect to the intention of the legislature, and to this end all other rules of construction are subordinate. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004). We determine intent by reading the statute as a whole and considering all relevant parts. *Sylvester*, 197 Ill. 2d at 232. In doing so, we presume that the legislature did not intend absurdity, inconvenience or injustice. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000).

It is also a well-established principle of statutory construction that " 'where terms used in [a] statute have acquired a settled meaning through judicial construction and are retained in subsequent amendments or re-enactments of the statute, they are to be understood and interpreted in the same sense theretofore attributed to them by the court unless a contrary intention of the legislature is made clear.' " *In re Marriage of O'Neill*,

138 Ill. 2d 487, 495 (1990), quoting *People ex rel. Nelson v. Wiersema State Bank*, 361 Ill. 75, 78-79 (1935). This is because the judicial construction of a statute becomes a part of the law, and it is presumed that the legislature in passing the law knew of the construction of the words in the prior enactment. *In re Marriage of O'Neill*, 138 Ill. 2d at 496. A related principle is that where the legislature chooses not to amend terms of a statute after judicial construction, it will be presumed that it has acquiesced in the court's statement of legislative intent. *In re Marriage of O'Neill*, 138 Ill. 2d at 496.

Applying the above-mentioned principles to the present case leads inexorably to the conclusion that the legislature did not intend that an employer who denies liability and declines to make payments in a workers' compensation case be precluded from availing itself of the independent medical examination provision of section 12. The same argument that claimant makes here was soundly rejected by this court shortly after the Workmen's Compensation Act was first passed in Illinois in 1913. In *Jackson Coal Co. v. Industrial Comm'n*, 295 Ill. 18 (1920), the claimant argued that the statute did not require an employee to submit to a physical examination where the employer is denying that the employee is entitled to receive compensation. This court held that the claimant's construction was not warranted, and stated as follows:

> "The statute requires an employee 'entitled to receive disability payments' to submit, at the request of the employer, to a physical examination. It is not restricted to cases where the employer acknowledges his liability and makes compensation payments. It applies to all cases where the employee is entitled to receive disability payments, and whether he is entitled to them is not dependent on whether the employer acknowledges liability by making payments. That the provisions of section 12 must be complied with by the employee to entitle him to the benefits of the act was

decided in *Hafer Washed Coal Co. v. Industrial Com.* 293 Ill. 425." *Jackson Coal Co.*, 295 Ill. at 20-21.

The holding of *Jackson Coal* was followed by this court in subsequent cases. See *Pocahontas Mining Co. v. Industrial Comm'n*, 301 Ill. 462 (1922), and *Paradise Coal Co. v. Industrial Comm'n*, 301 Ill. 504 (1922). In *Paradise Coal*, the claimant objected to the employer's request for a medical examination on the ground that no compensation was being paid and that he was not required to submit himself for examination until after it had been judicially determined that he was entitled to compensation. This court rebuffed that argument, holding that "[t]he employer's right to require an injured employee to submit to an examination is not restricted to cases where the employer acknowledges his liability to make compensation payments, and if the employee refuses to submit to such examination at a time and place reasonably convenient his right to compensation payments is suspended until such examination shall have taken place." *Paradise Coal Co.*, 301 Ill. at 507.

The critical language of section 12 at issue in this case has remained unchanged since the inception of the Act in 1913, despite numerous reenactments. The Act was amended in 1925 and again in 1927, but neither amendment changed the crucial language providing that " '[a]n employee entitled to receive disability payments shall be required, if requested by the employer, to submit himself at the expense of the employer for examination to a duly qualified medical practitioner or surgeon selected by the employer, at a time and place reasonably convenient for the employee ***.' " Ill. Ann. Stat., ch. 48, par. 149, Historical Note, at 511 (Smith-Hurd 1935); see also 820 ILCS 305/12 (West 1998). The 1925 amendment merely omitted the words " 'as soon as practicable after the injury, and also one week after the first examination and thereafter at intervals not oftener than once every four weeks, which examination shall be' " after the words

" 'at any time and place reasonably convenient for the employee,' " and preceding the words " 'for the purpose of determining the nature, extent and probable duration of the injury received by the employee ***.' " Ill. Ann. Stat., ch. 48, par. 149, Historical Note, at 511 (Smith-Hurd 1935). The 1927 amendment simply added a proviso requiring the employer to pay in advance sufficient money to defray traveling expenses, cost of meals and loss of wages where an employer requires a physical examination. Ill. Ann. Stat., ch. 48, par. 149, Historical Note, at 511 (Smith-Hurd 1935). Because the General Assembly has retained the identical language requiring an "employee entitled to disability payments" to submit himself for examination to avoid suspension of benefits, rather than changing this language in response to the judiciary's construction of the statute, we believe that the cases discussed above properly express the legislative intent.

Claimant argues that because Masonry denied liability from the outset, it should be prevented from asserting that he was an employee entitled to receive benefits for purposes of section 12. Claimant's argument, of course, ignores that by filing an adjustment of claim with the arbitrator for his injury, claimant asserted from the outset that he was an employee entitled to compensation payments.

Claimant also argues that any right to examination by an employer under section 12 should be limited to a single examination. Claimant's interpretation of the statute, however, would lead to an absurd result. Section 12 provides that the purpose of medically examining an injured employee at the employer's request is to determine the nature, extent and probable duration of the injury and to ascertain the amount of compensation that may be due *from time to time* for disability. 820 ILCS 305/12 (West 1998). If we were to accept claimant's

interpretation, an employer would not be able to address these issues as they arose from time to time. Section 12, when initially enacted, contained time intervals as to when a further examination could take place. 1913 Ill. Laws 337, 346. The General Assembly subsequently removed the time limits, and thus the need for a medical examination is not now limited to any specific time frame and has never been limited to any specific number. See 820 ILCS 305/12 (West 1998); 1925 Ill. Laws 378, 387. The need for a medical examination is instead tied to the need to address the nature, extent and duration of the injury and the amount of compensation. (820 ILCS 305/12 (West 1998)). Furthermore, no Illinois court has ever stated that the number of section 12 examinations is limited to any specific amount, though it has been continuously noted that section 12 cannot be used to harass or oppress an employee by unnecessary examinations (*King v. Industrial Comm'n*, 189 Ill. 2d 167, 176 (2000); *Jackson Coal Co.*, 295 Ill. 2d at 20).

Our conclusion that the right to request a section 12 examination is not limited to situations where an employer is paying compensation payments is consistent with the requirements of our Act as whole. Section 19(b) of the Act provides that "[t]he arbitrator may find that the disabling condition is temporary *** and may order the payment of compensation up to the date of the hearing, which award shall be reviewable and enforceable in the same manner as other awards, and in no instance be a bar to a further hearing and determination of a further amount of temporary total compensation or of compensation for permanent disability ***." 820 ILCS 305/19(b) (West 1998). Thus, it has been held that a second arbitration hearing involves different legal and factual issues than a first arbitration hearing addressing TTD, as the first hearing addresses a claimant's right to TTD up to the date of the first hearing. *National Wrecking Co. v.*

*Industrial Comm'n*, 352 Ill. App. 3d 561, 565 (2004). Each section 19(b) proceeding is a separate proceeding, limited to a determination of temporary total disability up to the date of the hearing, and each 19(b) decision is a separate and appealable order. *Elmhurst-Chicago Stone Co. v. Industrial Comm'n*, 269 Ill. App. 3d 902, 905 (1995).

While it is true that payment of compensation by an employer to an injured employee does not constitute an admission of the employer's liability to pay compensation (820 ILCS 305/8(b)(7) (West 1998)), it is also true that our Act does not require payment of temporary compensation prior to a final determination of liability on review where reasonable grounds exist to challenge that liability (*Avon Products, Inc. v. Industrial Comm'n*, 82 Ill. 2d 297, 304 (1980)). This is because many claims and awards can be challenged in the legitimate hope that the reviewing tribunal will review the evidence in a way favorable enough to the employer to reduce or rule out his liability. *Board of Education of the City of Chicago v. Industrial Comm'n*, 93 Ill. 2d 1, 9-10 (1982). Moreover, even if an arbitrator's award for an earlier period of temporary disability has been affirmed on appeal, an employer is not obligated to pay TTD for a subsequent period absent a final determination for that period where the employer has a reasonable belief that claimant's condition has stabilized. *Board of Education v. Industrial Comm'n*, 93 Ill. 2d at 9-10.

The rule that the employer may delay payment of TTD for a period subsequent to a section 19(b) determination based on a good-faith belief that the employee's condition has improved or stabilized is not without safeguards, however, because the purpose of the Act is to compensate claimants as early as possible for income lost due to job-related injuries. *Board of Education*, 93 Ill. 2d at 14. The employer, therefore, bears the burden of

justifying the delay if the employee challenges it, and the employer is held to a standard of objective reasonableness in order to avoid the severe sanctions of sections 19(k) and (l) and the attorneys fees and costs provisions of section 16 of the Act (see 820 ILCS 305/19(k), (l), 16 (West 1998)). *Board of Education*, 93 Ill. 2d at 9. It is not good enough merely to assert "honest belief" that a claim is invalid or that an award is not supported by the evidence to avoid sanctions; the employer's belief is justified "only if the facts which a reasonable person in the employer's position would have would justify it." *Board of Education*, 93 Ill. 2d 9-10.

One of the ways that an employer may provide itself with an objectively reasonable belief that an employee's condition has stabilized is through an employer-requested medical examination under section 12. *Board of Education*, 93 Ill. 2d at 10. If an employer believes that a claimant's condition has changed such that he is able to return to work, it can request that the claimant submit to a medical examination. *Navistar International Transportation Corp. v. Industrial Comm'n*, 331 Ill. App. 3d 405, 412 (2002). If the claimant refuses, the employer may then suspend the claimant's benefits. *Navistar*, 331 Ill. App. 3d at 412.

Thus, the statutory scheme as a whole indicates that the employer is entitled to a medical examination at its request to address the propriety of TTD for a period beyond that covered by an initial 19(b) arbitration hearing, even where the employer delays payment until the question of liability for the initial TTD period is finally resolved. This is precisely what occurred in the instant case. Claimant was injured in August 1998 and submitted to an employer-requested examination by Dr. Bernstein in December of that year. In March 1999, the arbitrator awarded claimant TTD up to the date of the hearing. In May 1999, over five months after the initial

examination by Dr. Bernstein, Masonry requested that claimant be reevaluated by Dr. Bernstein. Masonry at this point was entitled to this examination so that it could make an independent assessment as to whether claimant's back condition had stabilized or improved. Indeed, the Commission found that because claimant's need for further treatment and work status were unknown in May 1999, Masonry's demand for a second medical examination was not for an improper purpose or for harassment of claimant. The Commission also denied claimant an award of penalties, finding that Masonry's conduct was objectively reasonable. These were questions of fact properly determined by the Commission and its determinations thereon were not against the manifest weight of the evidence. See *Keystone Steel & Wire Co. v. Industrial Comm'n*, 85 Ill. 2d 178, 186-87 (1981).

The claimant relies upon *Fencl-Tufo Chevrolet, Inc. v. Industrial Comm'n*, 169 Ill. App. 3d 510 (1988), and argues that the appellate court erroneously distinguished it. In *Fencl-Tufo*, the claimant was injured on October 27, 1984, when he was pinned against a wall by a vehicle at work. Following the accident, the employer began making compensation payments to the claimant, which it continued to do until June 16, 1985, when it suspended payments based on a report from its investigator that the claimant had played golf on one occasion earlier that month. At the employer's request, claimant was examined by Dr. Oliver Grin on July 3, 1985. Dr. Grin eventually advised the claimant to "stay off work," and to set up a follow-up appointment six months later. Nevertheless, in October 1985, the employer requested that claimant be examined by Dr. James Dupre, even though Dr. Grin, also a physician chosen by the employer, had already examined the claimant and had recommended that he refrain from work and be reevaluated in *six* months.

The appellate court in *Fencl-Tufo* found that there

was little to gain from the second examination and that the employer had proceeded in a manner that did not warrant compliance. *Fencl-Tufo*, 169 Ill. App. 3d at 516. It held that, when "an employer has arbitrarily suspended payments, and a claimant has already complied with one requested examination, the claimant's failure to attend a further examination does not violate section 12." *Fencl-Tufo*, 169 Ill. App. 3d at 516.

We agree with the appellate court that *Fencl-Tufo* is readily distinguishable. Unlike the present case, the employer in *Fencl-Tufo* suspended payments based on an investigator's report, not on the failure to attend a medical examination. More importantly, the employer had a medical examination at its request, which indicated that the claimant should refrain from work for six months. Despite this, the employer requested a second examination within half that time. All of this took place in the context of a single section 19(b) proceeding, and the court found that the employer was proceeding in a manner that did not warrant compliance. In contrast, the instant case involved two section 19(b) proceedings, and the Commission specifically found that the May 1999 request for an examination was not for an improper purpose.

Furthermore, it appears that the *Fencl-Tufo* court misapprehended an employer's ability to delay payment where it has an objectively reasonable belief that the employee is not entitled to compensation payments. Relying on *Fuller v. Industrial Comm'n*, 86 Ill. 2d 131 (1981), *Fencl-Tufo* observed that the employer had made no effort to petition the Commission for suspension of payments; instead, it "unilaterally suspended" them. *Fencl-Tufo*, 169 Ill. App. 3d at 516. But as previously noted, our Act does not require payment of temporary compensation prior to a final determination of liability where reasonable grounds exist to challenge that liability. *Board of Education*, 93 Ill. 2d at 9-10. *Avon Products, Inc.*, 82

Ill. 2d at 304. Additionally, there is nothing in *Fuller* that would require an employer to petition the court to delay or suspend payment of TTD compensation prior to a final award. Instead, the Act provides ample remedies where an employer unreasonably or vexatiously denies payment.

*King v. Industrial Comm'n*, 189 Ill. 2d 167 (2000), while not directly on point, is instructive. There, the claimant was awarded permanent total disability for life in 1986. Ten years later, the employer filed a motion with the Commission to suspend claimant's compensation under section 12 because claimant had refused to comply with its request for a medical examination. A motion before the Commission to suspend payments was filed because the claimant's compensation award was for *permanent* total disability subject to a final award, not for temporary total disability in a section 19(b) proceeding. The Commission ordered claimant to submit to a medical exam. *King* rejected the claimant's argument that, because his award was final, section 12 did not require him to submit to a medical exam. *King* also rejected his claim that an employer is not entitled to a medical exam unless the employer first files a petition under section 8(f) of the Act to modify compensation, noting that it would not engraft any restrictions onto section 12 and that a medical exam may be required for an employer to determine whether grounds exist to modify claimant's benefits pursuant to section 8(f) (820 ILCS 305/8(f) (West 1998)). *King*, 189 Ill. 2d at 175, citing *Jackson Coal Co.*, 295 Ill. at 20-21. In responding to concerns that section 12 could be improperly used by employers, this court assuaged those concerns as follows:

"Of course section 12 should not be used for the improper purpose of harassing claimants or in a wrongful attempt to cut off a claimant's compensation. These mere possibilities, though, do not persuade us to disregard the plain meaning of the [Act]. *** A medical exam will often be the best method of ascertaining whether the claimant

currently is able to work and able to earn within the meaning of section 8(f). We note, moreover, that claimant's fear that employers will improperly utilize section 12 in an attempt to cut off liability fails to acknowledge the manner in which section 12 operates. Section 12 cannot be utilized to suspend a claimant's compensation unless the claimant refuses to comply with a proper request for a medical exam. [Citation.] A claimant, therefore, can avoid a suspension of compensation under section 12 through compliance." *King*, 189 Ill. 2d at 176.

Likewise, claimant in the instant case could have avoided any issue as to suspension of benefits after May 27, 1999, by simply complying with the request for examination.

*Navistar International Transportation Corp. v. Industrial Comm'n*, 331 Ill. App. 3d 405 (2002), cited by claimant, is factually distinguishable, but in general terms, it actually supports the appellate court's decision. There, the employer suspended the claimant's *permanent* total disability benefits based on a right it extrapolated from *King* to receive current medical information. *Navistar* held that nothing in the Act gives the employer the right to suspend payments based on current medical information. *Navistar*, 331 Ill. App. 3d at 412. Instead, it found the import of *King* to be clear: If an employer believes that a claimant's medical condition has changed such that he is able to return to work, it can request the claimant to submit to a medical exam under section 12; if the claimant refuses to submit, the employer may then suspend the claimant's benefits. *Navistar*, 331 Ill. App. 3d at 412. Thus, *Navistar* recognized an employer's right to suspend benefits if a claimant refuses to submit to an exam.

*Navistar* also addressed the employer's alternative argument that it was entitled to suspend the claimant's benefits because the claimant failed to attend an exam scheduled two months after the employer had terminated payments. The court rejected this argument on the

grounds that the employer admitted that it did not tender the travel expenses required by section 12, and it had already suspended payments at the time it requested the exam. *Navistar*, 331 Ill. App. 3d at 413. Finally, the court upheld the Commission's finding that the employer's conduct was sanctionable because the employer suspended payments in contravention of a final decision. *Navistar*, 331 Ill. App. 3d at 413.

*Navistar* is distinguishable from the present case as Masonry suspended payments based on the failure to attend a medical exam, not the failure to provide medical information. Although claimant argues for the first time before this court that Masonry failed to tender travel expenses, he failed to raise this argument before the Commission. Arguments not raised before the Commission are waived on appeal. *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 336 (1980); *Anders v. Industrial Comm'n*, 332 Ill. App. 3d 501, 509 (2002). Accordingly we find that claimant waived this argument. At any rate, the record *does* show that Masonry tendered a check for travel expenses along with its letter attempting to schedule the May 1999 appointment.

*Navistar* is also distinguishable because it involved a *final permanent* disability award that was entered in 1987, which the employer attempted to unilaterally suspend eight years later, without first petitioning for suspension, as the employer did in *King*. *Navistar* deemed a unilateral suspension of permanent disability payments in this context as *per se* unreasonable and vexatious (*Navistar*, 331 Ill. App. 3d at 413), though the case it cites to support that point actually stands for the proposition that when an employer unilaterally suspends permanent disability payments, it is a question of fact for the Commission to determine whether the employer's conduct was unreasonable and vexatious (see *Keystone Steel & Wire Co.*, 85 Ill. 2d at 186-87).

But, for the reasons previously stated, we find that the *per se* rule against suspension of payments announced in *Navistar*, whatever its merits, does not apply in the context of a TTD proceeding under section 19(b), where the employer is legitimately seeking a medical exam to determine if the claimant's temporary condition has improved or stabilized. In such cases, an injured employee can easily avoid any question as to his right to further TTD by complying with the request for the exam. If an employee refuses to submit to a proper request for a medical exam under section 12, his "right to compensation payments shall be temporarily suspended until such examination shall have taken place, and no compensation shall be payable under [the] Act for such period." 820 ILCS 305/12 (West 1998).

## CONCLUSION

For the foregoing reasons, we hold that the appellate court properly determined that claimant was required to submit himself for examination in May 1999 to avoid suspension of his benefits. Accordingly, we affirm the appellate court's judgment, which reversed the judgment of the circuit court and set aside the decision of the Commission.

*Appellate court judgment affirmed.*