NOTICE
Decision filed 12/16/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

Workers' Compensation
Commission Division
FILED: December 16, 2008

No. 1-08-0784WC

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| PATRICK WEYER, | ) | APPEAL FROM THE |
| | ) | CIRCUIT COURT OF |
| Appellant, | ) | COOK COUNTY |
| | ) | |
| v. | ) | |
| | ) | No. 07 L 50652 |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION et al. | ) | |
| (Wagner Heating and Ventilation, | ) | HONORABLE |
| | ) | SHELDON GARDNER |
| Appellee). | ) | JUDGE PRESIDING. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Claimant, Patrick Weyer, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2004)), seeking benefits for injuries to his left shoulder and lower back allegedly received while in the employ of respondent, Wagner Heating & Ventilation (Wagner). Following a section 19(b) hearing, an arbitrator, on July 24, 2003, found that claimant suffered an accidental injury on June 3, 2002, arising out of and in the course of his employment with Wagner. In her decision, the arbitrator concluded that claimant's left shoulder injuries were causally related to a June 3, 2002, work-related accident, but that his lower back condition was not. The arbitrator further found claimant to be wholly and temporarily incapable of work and awarded temporary total disability benefits for the periods of

June 4, 2002, to July 15, 2002, and from October 8, 2002, to February 26, 2003, representing 20 2/7 weeks TTD in the sum of $885.06 per week, and $779 in medical expenses.

Both parties sought a review of the arbitrator's decision before the Commission. Claimant received additional medical treatment to his left shoulder, including surgery, while review was pending before the Commission. On December 30, 2004, the Commission affirmed and adopted the arbitrator's July 24, 2003, decision and remanded the cause to the arbitrator pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 329 (1980). Neither party sought judicial review of the Commission's December 30, 2004, decision.

While review of the initial section 19(b) hearing was pending before the Commission, claimant filed for a subsequent section 19(b) hearing on January 21, 2004, seeking temporary total disability benefits from July 24, 2003, the date of the initial section 19(b) hearing. The cause was heard before the same arbitrator on July 25, 2005. The arbitrator found that claimant failed to meet his burden of proving a causal relationship between his left shoulder condition, as it existed at the July 25, 2005, arbitration hearing, and the June 3, 2002, accident. Claimant sought a review of the arbitrator's decision before the Commission. On June 25, 2007, the Commission affirmed and adopted the arbitrator's July 25, 2005, decision. Claimant sought judicial review of the Commission's decision in the circuit court of Cook County. On February 28, 2008, the circuit court confirmed the Commission's decision, and this appeal followed. On appeal, claimant argues that (1) the Commission erred by considering the issue of causation at the second section 19(b) arbitration hearing, and (2) the Commission's finding that claimant's left shoulder condition, as it existed at the July 25, 2005, section 19(b) hearing, was not causally related to the June 3, 2002,

No. 1-08-0784WC

work accident, was against the manifest weight of the evidence. We affirm.

BACKGROUND

The following factual recitation is taken from the evidence presented at the section 19(b) arbitration and review hearings. A review of the facts presented at the initial section 19(b) hearing is necessary for an understanding of the Commission's July 25, 2005, decision. As noted, petitioner filed an application for adjustment of claim pursuant to the Act, seeking benefits for injuries to his left shoulder and lower back allegedly received while in the employ of Wagner on June 3, 2002.

Since about 1975, claimant has worked as a union sheet metal worker for various employers. In 1997, claimant began working for Wagner as a sheet metal worker. This required claimant to unload sheet metal and duct work, move it around, position it, put it together, and install it. Claimant testified that his work for Wagner required him to lift at least 100 to 150 pounds on a constant basis.

Claimant had lower back and left shoulder problems prior to his June 3, 2002, incident. In addition to injuries from non-work-related activities, claimant had suffered a number of work-related injuries in his employment as a sheet metal worker for various employers and in other factors of his life.

The history of these prior injuries, noted below, is relevant to the issue of causation as treatment for these injuries extended up to the time of claimant's alleged work-related injuries in this case.

Claimant's lower back ailments began when he was involved in a motor vehicle accident

while serving as a naval officer for the United States Navy, in the early 1970s. As a result of that accident, claimant suffered fractures to his thoracic and lumbar spine. Claimant testified that he was medically treated for one year as a result of the accident, including the use of a back brace. Claimant was also involved in a non-work-related motor vehicle accident on September 13, 1993. Claimant injured his left shoulder and reinjured his lower back at that time and sought ongoing treatment from Dr. Lloyd Blakeman, claimant's family physician. X-rays performed at the time of the September 13, 1993, accident revealed wedging of claimant's vertebrae at T12, L1, and L3.

Claimant again injured his left shoulder and his lower back on September 13, 1995, when he fell from a ladder at work for another employer. At this point, Dr. Blakeman referred claimant to Dr. Richard Beaty, an orthopedic surgeon, who diagnosed claimant's condition as either brachial plexopathy, which means a decreased movement or sensation in the arm and shoulder, caused by impaired function of the brachial plexus (a bundle of nerves that control sensation and movement of the arm), or anterior capsule subluxation, which means an anterior shoulder dislocation. Claimant continued to treat with Dr. Beaty, obtaining physical therapy treatment every four to eight weeks throughout 1996 and 1997.

On July 5, 1997, claimant returned to Dr. Blakeman complaining of left shoulder pain. Dr. Blakeman's notes indicate that claimant complained of left shoulder impingement through 1999.

On September 2, 1999, claimant reported another work-related accident while working for Que Bar. He sought medical care again from Dr. Beaty that same day. Dr. Beaty diagnosed claimant with a myofascial strain with associated muscle spasm. On September 9, 1999, claimant was released to return to work without restrictions. Claimant continued to work and complained

of lower back pain. He underwent an MRI scan, which revealed fractures of the L1 and L3 vertebrae with a fragment at L3 impinging on the anterior aspect of the spinal canal. The MRI scan also revealed a small central disc protrusion at L5, S1. Dr. Beatty prescribed a series of epidural injections. The epidurals were administered by Dr. Ira Goodman, a pain specialist. Dr. Goodman authorized claimant to be off work during the administration of the series of injections. A functional capacity examination (FCE) was performed on March 30, 2000, which indicated that claimant was capable of returning to work only with light or medium duty.

On April 13, 2000, claimant reported decreased pain to Dr. Beaty and was released to return to full work duty. In his notes, Dr. Beaty noted:

> "I suspect [claimant] is going to have problems long term. I'm referring
> him to Dr. Gunnar Andersson for an opinion as to whether or not there is anything
> that can be done to improve this patient's ability to work at a heavy level. If there
> is not and I believe it is probably going to be the answer then [claimant] eventually
> will have to find lighter work *** ."

Claimant returned to Dr. Beaty in May 2000, indicating that he was not performing heavy work after returning to work for Wagner. At that time, claimant expressed a desire to undergo surgery to his left shoulder. On July 6, 2000, claimant reported to Dr. Beaty that he continued to experience back pain as well as shoulder pain. In August 2000, Dr. Beaty noted an increase in claimant's back pain after he resumed heavier labor.

Dr. Gunnar Andersson, an orthopedic surgeon, examined claimant on September 26, 2000. At that time, claimant complained of pain on both sides of his lower back in the lumbar

area. He also complained of radiating pain down his right leg. Dr. Andersson ordered an MRI scan. After reviewing the MRI, Dr. Andersson noted "old fractures of the vertebral bodies of L1 and L3 with a posterior displaced fragment of L3 impinging upon the anterior aspect of the thecal sac. There is a small central disc protrusion at L5, S1." Dr. Andersson administered an epidural injection to claimant's lower back, which provided initial relief with a subsequent return of pain. Claimant suspended his treatment with Dr. Andersson in October 2000. On October 10, 2000, Dr. Beaty noted that claimant reported difficulty performing his work due to back pain.

On January 19, 2001, claimant underwent a diagnostic arthroscopy, arthrotomy, open acromioplasty and rotator cuff repair by Dr. Beaty in the left shoulder. On August 29, 2001, claimant complained to Dr. Beaty of "recurrent problems in his back." Dr. Beaty recommended that claimant return to Dr. Andersson's treatment, but released claimant to work with a ten pound weight restriction based upon the condition of his left shoulder.

Claimant returned to work following the surgery on September 4, 2001. Claimant worked for about five months before returning to Dr. Andersson complaining of lower back pain. Dr. Anderson diagnosed claimant with spinal stenosis.

As noted, on June 3, 2002, the day of the alleged work-related accident pertaining to claimant's instant claims; claimant was working on a rooftop air conditioning unit. Claimant and two other workers were required to lift and attach, what was referred to at the June 24, 2003, arbitration hearing as a pipe cabinet, weighing approximately 250 pounds, to the side of one of the air conditioning units. Claimant claimed he suffered injuries to his left shoulder and lower back while in the process of lifting the pipe cabinet. Claimant sought treatment for his left shoulder

pain from Dr. Beaty on June 4, 2002, the day after the June 3, 2002, work accident. Dr. Beaty's records show that he diagnosed claimant with left shoulder strain. Dr. Beaty ordered an MRI scan of claimant's left shoulder, which was performed on June 8, 2002. The MRI scan revealed that claimant's left shoulder had postoperative changes stemming from the January 19, 2001, rotator cuff repair. However, the MRI also revealed that the glenoid labrum was intact. The bicep tendon was located normally within the bicipital groove. No joint effusion was noted. Dr. Beaty prescribed claimant with Darvocet for pain, and restricted claimant to light duty work. Claimant's pain persisted, and on June 18, 2002, he began physical therapy.

Claimant also returned to Dr. Andersson on July 25, 2002. An MRI of claimant's lower back ordered by Dr. Andersson, revealed nerve root compression at L5, S1. Dr. Andersson noted that surgery may be necessary. Dr. Andersson released claimant to light duty work, but recommended claimant undergo a spinal fusion.

Meanwhile, claimant's left shoulder pain seemed to improve with time off from heavy work. On July 15, 2002, Dr. Beaty noted, "As far as his shoulder is concerned, [claimant] could return to work." On August 20, 2002, Dr. Beaty again noted claimant's left shoulder improvement with time off from heavy work.

In September 2002, claimant underwent a myelogram and CT scan previously ordered by Dr. Andersson to claimant's lower back. At the arbitration hearing, claimant testified that he was required to place his left hand behind his head during the CT scan. Claimant testified that that maneuver caused him to experience "burning" in his left shoulder and that the pain was "real, real bad." Claimant demanded that medical personnel pull him out of the CT scan machine.

7

On November 5, 2002, claimant returned to Dr. Beaty complaining of pain in his left shoulder associated with overhead lifting. Dr. Beaty noted claimant's lower back treatment with Dr. Andersson and noted "[i]f [claimant] is not going back to work, with regards to his back, he probably does not need much more done with regards to his shoulder."

In December 2002, claimant underwent another FCE. The FCE evaluator noted three times that "material handling limited by back pain with spasm" or "back pain with fatigue." No mention of shoulder pain was made in the report.

Pursuant to section 12 of the Act, Wagner requested claimant to be examined by Dr. Gary Skaletsky, a neurosurgeon. Dr. Skaletsky noted that he agreed with Dr. Andersson that spinal fusion was necessary, but opined that claimant's back injury was attributable to a preexisting condition, namely claimant's fractured vertebrae suffered as a result of the motor vehicle collision during his service with the United States Navy, while claimant's shoulder injury was attributable to the work accident of June 3, 2002.

Dr. Beaty continued to note claimant's complaints of left shoulder pain. On January 29, 2003, Dr. Beaty opined that, although claimant was not able to return to work as a result of his back condition, he was not convinced that claimant was able to return to work with regard to his left shoulder injury either. Dr. Beaty began a series of epidural injections to claimant's left shoulder in an attempt to eliminate some of claimant's pain.

In February 2003, Dr. Beaty imposed a 70-pound lifting restriction, and a 50-pound overhead lifting restriction, for claimant's left shoulder. Dr. Beaty noted, "It is becoming apparent that [claimant] is borderline for returning to work unless it is primarily as a supervisor.

If he has to go back working regular, unrestricted, in his very heavy work, I believe that he is probably not going to be able to do it." In accordance with his findings, Dr. Beaty released claimant to restricted work.

On June 5, 2003, at Wagner's request and pursuant to section 12 of the Act, claimant was examined by Dr. Mark Levin, an orthopedic surgeon. After reviewing the records that were provided to him, Dr. Levin opined that there was no new pathology demonstrated as a result of the work accident of June 2, 2002, to claimant's left shoulder. However, Dr. Levin withheld additional opinions until he was given an opportunity to review the December 2002 FCE.

Dr. Beaty continued to treat claimant for shoulder pain through the initial July 24, 2003, section 19(b) hearing. On June 18, 2003, Dr. Beaty noted that claimant complained of increased pain as a result of washing his father's automobile.

As noted, on July 24, 2003, an arbitrator determined at the first section 19(b) arbitration hearing that claimant suffered a work accident injury on June 3, 2002, and awarded TTD from June 4, 2002, to July 15, 2002, and from October 8, 2002, to February 26, 2003. TTD for the intervening periods was not awarded due to the arbitrator's finding that claimant did not look for work within the medically prescribed restrictions. As noted, the arbitrator determined that claimant's left shoulder injury was causally related to the June 3, 2002, accident and that his lower back ailments were not. With regard to claimant's left shoulder, the arbitrator based her findings on Dr. Beaty's and Dr. Skaletsky's medical notes, which indicated that claimant's left shoulder injury was caused by the June 3, 2002, accident. With regard to claimant's lower back, the arbitrator found that no documentary evidence demonstrated that claimant's lower back ailments

were causally related to the June 3, 2002, work accident. Both parties filed for review of the arbitrator's decision.

Claimant sought further medical treatment after the initial section 19(b) arbitration hearing. On October 30, 2003, Dr. Beaty noted that he reviewed the July 2003 arbitration decision and commented that he never released claimant to regular-duty work. He noted, "Patient has been off work since the initial date that I saw him which was June 4, 2002, until today's date because of his left shoulder pain. He was capable of returning to work light duty *** and I state that in my notes in February 26, 2003." Dr. Beaty reiterated claimant's work restrictions, ordering claimant to stay off work unless light duty work with no overhead lifting was available.

On January 5, 2004, claimant was again examined by Dr. Levin. Although Dr. Levin found some minor limitations in claimant's left shoulder range of motion, the doctor found that claimant's rotator cuff strength was normal bilaterally. Additionally, Dr. Levin found that claimant was capable of performing full, functional work activity, including overhead activity and lifting. Dr. Levin also found that claimant required no further medical treatment as he reached maximum medical improvement.

In March 2004, Dr. Beaty noted that claimant complained of a persistent burning sensation in his left shoulder. In April 2004, Dr. Beaty prescribed Neurontin to ease the burning in claimant's shoulder.

As noted, on December 30, 2004, the Commission affirmed and adopted the arbitrator's decision of July 24, 2003. Neither party sought judicial review of the Commission's decision.

Dr. Beaty examined claimant again on January 12, 2005, eight months after his last

examination. On that date, Dr. Beaty noted, "[Claimant] continues to have pain in the superior arc and I am questioning whether or not he has torn the rotator cuff or glenoid labrum." Dr. Beaty ordered an MR-arthrogram to better investigate claimant's persitent left shoulder pain. Dr. Beaty testified that he ordered the MR-arthrogram because it is a superior diagnostic exam tool for SLAP lesions. A SLAP ("Superior Labrum from Anterior to Posterior") lesion is an injury to the glenoid labrum, a part of the shoulder.

The MR-arthrogram, administered January 19, 2005, revealed a SLAP lesion of claimant's left shoulder glenoid labrum. In reviewing the results of the MR-arthrogram on January 26, 2005, Dr. Beaty opined that the SLAP lesion had been the cause of claimant's persistent left shoulder problems since the June 3, 2002, work accident. Dr. Beaty noted, "[i]t is possible that when [claimant] lifted the 250 lb. cabinet that [the glenoid labrum] had shifted. [Claimant] tore the glenoid labrum in 2002 and this is what has caused the persistent pain [claimant] has been exhibiting since that time." Dr. Beaty also noted that claimant's difficulty with overhead lifting since June 3, 2002, was consistent with a SLAP lesion. Dr. Beaty recommended surgery to correct the SLAP lesion.

On February 8, 2005, claimant was examined by Dr. Charles Bush-Joseph, an orthopedic surgeon. Claimant sought a second opinion regarding Dr. Beaty's recommendation of surgery to correct the SLAP lesion. Claimant reported chronic back and left shoulder pain as a result of a work injury on June 3, 2002. Claimant denied any pain following his 1999 shoulder injury and surgery. Based on the history provided by claimant and his review of a single diagnostic scan, presumably the MR-arthrogram (the doctor's report does not indicate the date of the diagnostic

scan he reviewed), Dr. Bush-Joseph agreed with Dr. Beaty's recommendation of surgery to correct the SLAP lesion.

Dr. Levin examined claimant for a third time pursuant to section 12 of the Act on February 7, 2005, on behalf of Wagner. Dr. Levin reviewed claimant's medical records in relation to his left shoulder treatment. He reviewed a June 8, 2002, MRI and the January 18, 2005, MR-arthrogram. Dr. Levin released two reports as a result of his examination, one on February 7, 2005, and a second on March 11, 2005. Dr. Levin noted that the labral tear "could have occurred over the past several years and does not relate back to the alleged work injury of June 3, 2002. There is the MRI report that shows the labrum was intact right after the alleged work injury." Dr. Levin was referring to the MRI taken a few days after the June 3, 2002, work-related accident, which demonstrated that claimant's left shoulder glenoid labrum was intact.

In a narrative written report of April 14, 2005, Dr. Beaty reiterated that claimant had been disabled since his shoulder injury on June 3, 2002. Dr. Beaty opined that the SLAP lesion, revealed by the MR-arthrogram, explained the biciptial tendon pain and pain in the subacromial area that claimant reported the day after the June 3, 2002, accident. Dr. Beaty also noted that the SLAP lesion was "consistent with [claimant] tearing the glenoid labrum while he was trying to catch a 250 lb. cabinet as it tilted with his left arm," which occurred on the day of the June 3, 2002, accident.

Dr. Beaty noted that the SLAP lesion was revealed by the MR-arthrogram, and not an MRI, because the MR-arthrogram is diagnostically superior to an MRI scan for the purpose of identifying labral tears. Dr. Beaty opined that "based on the patient's persistent pain, the injury

that caused the pain is the June 3, 2002, injury."

As noted, on July 25, 2005, at the second section 19(b) hearing the arbitrator found that claimant failed to meet his burden of proving a causal relationship between the SLAP lesion and the June 3, 2002, work accident. The arbitrator believed Dr. Levin over Dr. Beaty. The arbitrator noted that the SLAP lesion was first diagnosed in January 2005, more than two years after the date of the accident. In making her findings, the arbitrator noted that the MRI of claimant's left shoulder, taken a few days after claimant's injury, revealed that the glenoid labrum was intact. The arbitrator also relied on Dr. Levin's January 2004 finding of full shoulder strength. The arbitrator also noted that Dr. Beaty's explanation that the failure to discern the lesion prior to the date of the MR-arthrogram because the arthrogram is a vastly superior diagnostic test was unrebutted. However, the arbitrator also noted that Dr. Beaty released claimant to work without restrictions in July 2002, one month after the June 3, 2002, accident. The arbitrator also took note of the FCE performed in December 2002, which did not indicate any problems with claimant's left shoulder. The arbitrator also noted that Dr. Levin found full strength in claimant's left shoulder/rotator cuff in January 2004. The arbitrator found it improbable that claimant could be released to work, initially at full duty and later at restricted duty, not have his shoulder tested during an FCE, and exhibit full rotator cuff strength upon physical examination had he suffered from a SLAP lesion on June 3, 2002. The arbitrator found that while claimant had suffered some form of aggravation to his preexisting left shoulder condition, justifying the TTD benefits awarded after the first arbitration hearing, the aggravation had resolved by January 2004.

13

No. 1-08-0784WC

The arbitrator discounted Dr. Bush-Joseph's causal findings as it contained a history of claimant's "excellent result with a full recovery" following claimant's 1999 shoulder injury. The arbitrator noted that Dr. Beaty's records rebutted Dr. Bush-Joseph's history, as Dr. Beaty's medical notes showed claimant's complaints of pain through October 2001. Further, the arbitrator noted that it appeared that Dr. Bush-Joseph reviewed a single diagnostic scan and that the doctor did not provide the date of that diagnostic scan in his report.

As noted, claimant sought a review of the arbitrator's second 19(b) decision before the Commission. On June 25, 2007, the Commission affirmed and adopted the arbitrator's July 25, 2005, decision. claimant sought judicial review of the Commission's decision in the circuit court of Cook County. On February 28, 2008, the circuit court confirmed the Commission's decision, and this appeal followed.

ANALYSIS

On appeal, claimant first argues that the circuit court erred by confirming the Commission's June 25, 2007, decision affirming and adopting the arbitrator's July 25, 2005, decision finding that the SLAP lesion was not causally related to the June 3, 2002, work accident at issue in the case at bar. Specifically, claimant argues that the circuit court erred by allowing the parties to "re-litigate" the issue of causation. Claimant contends that the issue of causation was resolved by the Commission's July 24, 2003, finding that claimant was entitled to TTD benefits up until the date of the first section 19(b) hearing on July 24, 2003. We look to the Commission's findings whenever the circuit court confirms a decision of the Commission. *Pietrzak v. Industrial Comm'n*, 329 Ill. App. 3d 828 (2002).

14

Claimant argues that the causation finding was final, as neither party sought judicial review of the Commission's July 24, 2003, decision. Although not stated in exact terms, claimant appears to argue that the arbitrator's July 25, 2005, finding that the SLAP lesion was not causally related to the June 3, 2002, work accident was precluded by the law of the case doctrine.

Under the law-of-the-case doctrine, the unreversed decision of a question of law or fact made during the course of litigation settles that question for all subsequent stages of the suit. *Miller v. Lockport Realty Group, Inc.*, 377 Ill. App. 3d 369, 374 (2007). This court has held that principles underlying the law-of-the-case doctrine should be applied to matters resolved in proceedings before the Commission. *Irizarry v. Industrial Comm'n*, 337 Ill. App. 3d 598 (2003).

The July 25, 2005, section 19(b) arbitration hearing involved different legal and factual issues than the July 24, 2003, section 19(b) arbitration hearing, and the law of the case doctrine did not prohibit the litigation of those new issues. The first section 19(b) arbitration hearing addressed claimant's entitlement to TTD benefits from the June 3, 2002, work accident up to the July 24, 2003, arbitration hearing. The second section 19(b) arbitration hearing addressed claimant's entitlement to TTD benefits after the July 24, 2003, arbitration hearing. Section 19(b) of the Act states that " '[t]he arbitrator may find that the disabling condition is temporary *** and may order the payment of compensation up to the date of the hearing, which award shall be reviewable and enforceable in the same manner as other awards, and in no instance be a bar to a further hearing and determination of a further amount of temporary total compensation or of compensation for permanent disability.' " *R.D. Masonry, Inc. v. Industrial Comm'n*, 215 Ill. 2d 397, 407 (2005), quoting 820 ILCS 305/19(b) (West 1998). "Each section 19(b) proceeding is a

separate proceeding, limited to a determination of temporary total disability up to the date of the hearing, and each 19(b) decision is a separate and appealable order." *R.D. Masonry, Inc.*, 215 Ill. 2d at 408, citing *Elmhurst-Chicago Stone Co. v. Industrial Comm'n*, 269 Ill. App. 3d 902, 905 (1995).

Contrary to claimant's assertion, the arbitrator did not "reverse herself" on her causation finding of July 24, 2003. On July 24, 2003, the arbitrator found that the injuries to claimant's left shoulder and the ailments he suffered, up to the date of the July 24, 2003, section 19(b) arbitration hearing, were causally related to the June 3, 2002, work accident. On July 24, 2003, the arbitrator also found claimant wholly and temporarily incapable of work and awarded temporary total disability benefits for the periods of June 4, 2002, to July 15, 2002, and October 8, 2002, to February 26, 2003. That decision remains undisturbed. As noted, that decision was affirmed and adopted by the Commission on December 30, 2004. The Commission's decision was not appealed from, and it became final.

The second section 19(b) arbitration hearing, held on July 25, 2005, addressed the issue of whether the SLAP lesion, first diagnosed in January 2005, more than two years after the date of the June 3, 2002, work accident, was causally related to the work accident, and whether claimant was entitled to TTD benefits from the time of the first arbitration hearing up to the time of the second. In finding that claimant failed to prove a causal relationship between the SLAP lesion and the June 3, 2002, work accident, the arbitrator noted that evidence introduced at the July 25, 2005, arbitration hearing indicated that while claimant had suffered some form of aggravation to his preexisting left shoulder condition on June 3, 2002, the aggravation had resolved by January

2004. Clearly, the arbitrator did not "reverse" her July 24, 2003, causation finding.

Claimant cites to *Vogel v. Industrial Comm'n*, 354 Ill. App. 3d 780 (2005), to support his contention that the circuit court erred by confirming the Commission's June 25, 2007, decision. In *Vogel*, the Commission found that the claimant suffered a work-related injury while delivering a whirlpool tub in the course of his employment for the employer. *Vogel v. Industrial Comm'n*, 354 Ill. App. 3d 780, 782 (2005). The claimant was then involved in two automobile accidents. *Vogel*, 354 Ill. App. 3d at 783-84. The claimant was awarded TTD benefits up until the date of the first accident because the Commission found that the auto accidents " 'further aggravated [the Claimant's] medical condition and resulted in the need for additional medical treatment and lost time.' " *Vogel*, 354 Ill. App. 3d at 785. As a result, the Commission found that the claimant's condition of ill-being on the date of the arbitration hearing was not causally related to the July 10, 1998, work accident. *Vogel*, 354 Ill. App. 3d at 785. On review, the circuit court ruled that the Commission's decision was against the manifest weight of the evidence because the two automobile accidents did not break the chain of causation between the claimant's work accident and his injuries, as the work and automobile accidents were "concurrent causes," under the evidence presented in that case. *Vogel*, 354 Ill. App. 3d at 785, 789. In affirming, this court reiterated the oft-cited principles that a work-related injury need not be the sole or principal causative factor of a the claimant's injuries, as long as it was a causative factor in the resulting condition of ill-being, and that other incidents, whether work related or not, may have aggravated the claimant's condition is irrelevant. *Vogel*, 354 Ill. App. 3d at 786, citing *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203 (2003), and *Lasley Construction Co. v. Industrial*

No. 1-08-0784WC

*Comm'n*, 274 Ill. App. 3d 890, 893 (1995).

*Vogel* is inapposite to the case at bar. As is evident from the foregoing, *Vogel* addressed the issue of intervening causes and reaffirmed the principle that "every natural consequence that flows from an injury that arose out of and in the course of the claimant's employment is compensable unless caused by an independent intervening accident that breaks the chain of causation between a work-related injury and an ensuing disability or injury." *Vogel*, 354 Ill. App. 3d at 786, citing *Teska v. Industrial Comm'n*, 266 Ill. App. 3d 740, 742 (1994). As noted, the arbitrator in the case at bar determined at the second section 19(b) hearing that claimant failed to prove a causal relationship between the SLAP lesion and the June 3, 2002, work accident, after determining that the aggravation of claimant's preexisting injuries had resolved by January 2004. The arbitrator in the case at bar did not determine that a subsequent injury to claimant's left shoulder broke the causal chain between claimant's work-related injury and claimant's shoulder condition on the date of the second section 19(b) arbitration hearing.

The course pursued here finds support in section 12 of the Act. The Illinois Supreme Court has held that "even if an arbitrator's award for an earlier period of temporary disability has been affirmed on appeal, an employer is not obligated to pay TTD for a subsequent period absent a final determination for that period where the employer has a reasonable belief that claimant's condition has stabilized." *R.D. Masonry*, 215 Ill. 2d at 408. "One of the ways that an employer may provide itself with an objectively reasonable belief that an employee's condition has stabilized is through an employer-requested medical examination under section 12." *R.D. Masonry*, 215 Ill. 2d at 409. That is precisely what occurred here. Claimant was examined by Dr. Levin pursuant

18

to section 12 of the Act. Dr. Levin found that the SLAP lesion was not casually related to the June 3, 2002, work accident. At the second section 19(b) arbitration hearing, Wagner challenged its liability pertaining to claimant's SLAP lesion, where it was determined that the SLAP lesion was not casually related to the work accident and that any injury that claimant suffered as a result of the work accident had resolved in January 2004. Based on the foregoing, we find that the Commission did not wrongfully reach the question of whether the SLAP lesion was causally related to the June 3, 2002, work accident.

Claimant then argues that the Commission's June 25, 2007, decision, finding that the SLAP lesion was not causally related to the June 3, 2002, work accident was against the manifest weight of the evidence. Whether a causal connection exists is a question of fact for the Commission, and a reviewing court will overturn the Commission's decision only if it is against the manifest weight of the evidence. *Navistar International Transportation Corp. v. Industrial Comm'n*, 331 Ill. App. 3d 405, 415 (2002). In resolving questions of fact, it is the function of the Commission to judge the credibility of the witnesses and resolve conflicting medical evidence. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253 (1980). A factual finding by the Commission will not be set aside on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44 (1987). For a finding of fact to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent from the record on appeal. *University of Illinois v. Industrial Comm'n*, 365 Ill. App. 3d 906, 910 (2006). If there is sufficient factual evidence in the record to support the Commission's determination, it will not be set aside on appeal. *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 450 (1995).

Here, the factual evidence presented at the July 25, 2005, arbitration hearing was sufficient to support the Commission's determination that claimant's SLAP lesion was not causally related to the June 3, 2002, work accident. As noted, the arbitrator noted that the SLAP lesion was first diagnosed in January 2005, more than two years after the date of the accident. The arbitrator also noted that the MRI of claimant's left shoulder, taken a few days after the June 3, 2002, work accident, revealed that the glenoid labrum was intact. Although the arbitrator noted that Dr. Beaty's explanation that the failure to discern the SLAP lesion prior to the date of the MR-arthrogram because the arthrogram is a vastly superior diagnostic exam was unrebutted, she also noted that Dr. Beaty released claimant to work without restrictions in July 2002, one month after the work accident. The arbitrator also noted that claimant underwent an FCE in December 2002, which did not indicate any problems with claimant's left shoulder. The arbitrator also credited Dr. Levin's findings of full strength in claimant's left shoulder/rotator cuff in January 2004. Finally, the arbitrator found it improbable that claimant could be released to work, not have his shoulder tested during the December 2002 FCE, and exhibit full rotator cuff strength upon physical examination had he suffered from a SLAP lesion on June 3, 2002. Furthermore, the arbitrator discounted Dr. Bush-Joseph's causal findings as it contained a history of claimant's "excellent result with a full recover" following claimant's 1999 shoulder injury. The arbitrator noted that Dr. Beaty's records rebutted Dr. Bush-Joseph's history, as his medical notes showed claimant's complaints of pain through October of 2001. Further, the arbitrator discounted Dr. Bush-Joseph's causal findings because it appeared that he only reviewed a single diagnostic scan and did not provide the date of that diagnostic scan in his report. The arbitrator and later the

20

Commission, when adopting the findings of the arbitrator, believed Dr. Levin over Dr. Beaty. As noted, it is the function of the Commission to judge the credibility of the witnesses and resolve conflicting medical evidence. *O'Dette*, 79 Ill. 2d at 253.

Based upon the foregoing, we find that the record contains a sufficient evidentiary basis for the Commission's determination that the claimant was not entitled to TTD benefits from the date of the first section 19(b) arbitration hearing to the date of the second section 19(b) arbitration hearing, because claimant failed to prove that the SLAP lesion was causally related to the June 3, 2002, work accident.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court which confirmed the Commission's July 25, 2007, decision.

Affirmed.

R.E. GORDON, J., with McCULLOUGH, P.J., and GROMETER, HOLDRIDGE, and DONOVAN, JJ., concurring.

No. 1-08-0784WC

NO. 1-08-0784WC

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | |
|---|---|
| PATRICK WEYER,<br>        Appellant,<br>                    v.<br><br>THE INDUSTRIAL COMMISSION, et al.,<br>(Wagner Heating & Ventilation,<br><br>        Appellee). | APPEAL FROM THE<br>CIRCUIT COURT OF<br>COOK COUNTY.<br><br>No.    07 L 50652<br><br><br>HONORABLE<br>SHELDON GARDNER,<br>JUDGE PRESIDING. |

Opinion Filed:        December 16, 2008

Justices:        Honorable Robert E. Gordon, J., with

        Honorable John T. McCullough, P.J.
        Honorable R. Peter Grometer, J.,
        Honorable William E. Holdridge, J., and
        Honorable James K. Donovan, J., concur.

Attorney        Capron & Avgerinos, of Chicago, IL.  Daniel F. Capron, of counsel.
for        55 W. Monroe Street, Suite, #900
Appellant(s)        Chicago, IL  60603

Attorney         Rusin Maciorowski & Friedman, of Chicago.  Michael C. Milstein and
for         Daniel R. Egan, of counsel.
Appellee(s)        10 S. Riverside Plaza, Suite #1530 -- Chicago, IL  60606