2020 IL App (3d) 190486WC-U
No. 3-19-0486WC
Order filed April 2, 2020

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

_____

| | | |
|---|---|---|
| JAYSEN HAMANN, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Peoria County |
| v. | ) | No. 18MR641 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION *et al.* (Keystone Steel & Wire, | ) | |
| Defendant-Appellee). | ) | Honorable |
| | ) | Mark E. Gilles, |
| | ) | Judge Presiding. |

_____

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hoffman, Hudson, and Barberis concurred in the judgment.

**ORDER**

¶ 1.   *Held*:  The Commission's finding that claimant failed to prove he sustained a work-related accident was not against the manifest weight of the evidence and it committed no error in denying claimant compensation under the Act.

¶ 2      On March 13, 2015, claimant, Jaysen Hamann, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 to 30 (West 2014)), seeking benefits from appellee, his employer, Keystone Steel and Wire (Keystone). Claimant alleged he sustained a work-related injury on March 2, 2015, when he slipped and twisted his back.

He visited the on-site medical office, disclosed the incident to his supervisor, and went home without finishing his shift. He visited several treatment providers, including a physical therapist. Because he was still experiencing pain, he requested back surgery, which one physician performed in July 2015. Eventually, his pain improved, and he returned to work.

¶ 3        Following a hearing, the arbitrator found claimant had failed to prove he sustained an accident that arose out of and in the course of his employment and denied him all benefits under the Act. The arbitrator awarded the employer a credit in the amount of $15,878.57 for "other credits." On review, the Illinois Workers' Compensation Commission (Commission) adopted the arbitrator's decision in full. On judicial review, the circuit court of Peoria County confirmed the Commission. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        On October 14, 2016, the arbitrator heard evidence on claimant's petition. Claimant testified he had been employed at Keystone since April 15, 2013, as a mechanical technician, working under the supervision of Derek Klinedinst. Keystone's facility included several different buildings. As claimant testified, "that entire place is separate buildings." Claimant's duties as a mechanical technician included servicing machinery and performing various maintenance throughout the steel-mill side of the facility. He would typically go in and out of the various buildings "doing rounds, checking fluids, doing rounds, going from one work area to another for tools and such." He performed routine maintenance checks on machinery and responded to maintenance requests from other employees.

¶ 6        On March 2, 2016, claimant was working a 16-hour shift. Claimant testified two to four times a week he was forced to work double shifts. After approximately 10 hours into this shift, he "slipped and hurt [his] back." He said he was walking outside with a coworker, Mike

Pagan, from the discharge hydraulic area (one building) to the pump pad (another building) when he slipped. Claimant said Pagan was in front of him "a little bit" as they both walked in a tractor's frozen tire track. Claimant said the surface was concrete underneath dirt but, at the time, it was "rutted ice from the tracks, the tractor tires" with "potholes of ice." The area is generally used by trucks, tractors, and other big machinery. Claimant said he fell at approximately 8:30 a.m. By that time, "it had warmed up a little[.] [He] believe[d] that's what led to the slip was that the ice had melted a little. [He] walked over that same area prior that evening."

¶ 7 Claimant testified he was wearing the required leather steel-toed boots at the time. He said he "was walking *** between the two areas, and as [he] slipped, [he] twisted and bent backwards, and that's when [he] hurt [his] back." The lower left side of his buttock hurt as well. He was not in pain prior to the fall and was not under any type of medical care or under any restrictions. As a part of the pre-employment-physical-screening process in April 2013, claimant was examined by four different physicians and was never advised to seek medical treatment for his lower back.

¶ 8 Claimant testified he told Pagan and Klinedinst about his incident and injury to his back. Klinedinst directed claimant to go to "plant medical," a medical office on-site. There, he was examined by Keystone physician Dr. Homer Pena, who prescribed pain medication. As the morning went on, claimant felt burning and tightness in his lower back. He said it felt like a pulled muscle. He went home without completing his shift. His pain worsened throughout the day and night. The same day, the on-duty nurse completed an incident report, which included a questionnaire completed by claimant and a medical summary of the injury. According to claimant's answers on the questionnaire, "ice" was the cause of the injury; the part of his body injured was his "back"; and the incident happened when he "slipped on ice while walking." He

indicated Mike Pagan witnessed the incident. The nurse noted the type of injury was a "sprain" and "strain."

¶ 9        On March 3, 2015, claimant went to see Dr. Pena at his office at OSF Occupational Health. When asked if Dr. Pena provided him any relief, claimant said "[a]bsolutely not." His pain continued so he went to the emergency room and had his back X-rayed. Finding no irregularities, the hospital discharged him with medication and advised him to follow up with Dr. Pena. Dr. Pena said claimant had not suffered an occupational injury. He told claimant that "[he] was fine, go back to work." Neither Dr. Pena nor the emergency room physician found any objective evidence of injury.

¶ 10       On March 4, 2015, claimant handwrote the following statement regarding the incident:

> "I Jaysen Hamann injured my back when I slipped on the ice while walking in the area that is between discharge hud and the pump pit for caster. I caught my balance and did not fall, however, I severely twisted while doing so. I felt as if I may have pulled my low back out as well as my arm. The following morning the pain radiated down my leg and my arm was just tender. My arm felt better a couple days later, whereas my leg/low back haven't. Mike Pagan was with me and offered a hand while regaining balance. I reported the incident to my foreman, Derek Klinedinst, within 15 min. of the accident."

¶ 11       On March 5, 2015, claimant went to Prairie Spine and Pain Institute (Prairie Spine) for treatment. On his intake form, a form that claimant signed, in response to "what started the problem," claimant indicated he "slipped on ice at work; [illegible]; jolted back; coworker caught him." The physician's assistant, Derek Morrow, recommended claimant participate in physical

therapy. (Claimant reported in his medical history that in 2000, he had suffered a back injury and Dr. Dzung Hong Dinh performed back surgery—a laminectomy at L5, S1. Sometime in 2001, Dr. Dinh released claimant to return to work.) Morrow ordered a magnetic resonance imaging (MRI) scan, which revealed evidence of the prior laminectomy accompanied by advanced degenerative changes. No recurrent or new disc herniations appeared.

¶ 12        Physical therapy did not relieve claimant's pain. On March 17, 2015, claimant saw Dr. Richard Kube, an orthopedic surgeon at Prairie Spine, who, after reviewing the most recent MRI, believed claimant may have suffered a disc protrusion at the surgical site. He believed it possible that claimant's slip aggravated a protrusion or created one. He ordered lumbar epidural steroid injections. The two injections provided only temporary relief. Claimant continued with physical therapy. In May 2015, Dr. Kube suggested surgery.

¶ 13        Claimant testified that Keystone requested an independent medical examination (IME) with spine specialist and board-certified orthopedic physician, Dr. Julie Wehner. According to Dr. Wehner's notes, she saw claimant on April 1, 2015, and May 8, 2016. Claimant complained of back pain at a level 7 out of 10 with pain radiating down his left leg and numbness and tingling in his toes. He reported no pain in his right leg. Claimant told Dr. Wehner he had no lumbar MRIs after his 2001 surgery. However, Dr. Wehner reviewed five MRI scans of claimant's lumber spine from 2002 through 2015. Upon her review of the 2002 MRI, Dr. Wehner noticed a right-side disc herniation at L5-S1, the site of claimant's 2001 fusion surgery. The subsequent studies showed mild to moderate degenerative changes. Upon her review of the post-incident MRI, she found only evidence of the prior laminectomy and related degenerative changes. She found no acute trauma-related irregularities and no recurrent disc herniation. In her opinion, claimant had reached maximum medical improvement and could return to work with no restrictions and without the

need for further treatment. She further opined that (1) claimant's complaints of severe pain did not correlate with the clinical and radiographic findings and (2) fusion surgery was not indicated.

¶ 14        Nevertheless, on July 27, 2015, Dr. Kube performed a decompression and lumbar fusion surgery and then ordered a course of physical therapy. After surgery, physical therapy, and two post-operative injections, claimant's pain decreased. Dr. Kube released claimant to full-duty work on February 2, 2016, and claimant returned to work at Keystone.

¶ 15        On May 8, 2016, Dr. Wehner again examined claimant at Keystone's request. Her opinion had not changed after her review of the updated medical records. She continued to believe Dr. Kube's fusion surgery was not indicated. In Dr. Wehner's opinion, to a reasonable degree of medical certainty, the mechanics of a slip on March 2, 2015, did not produce any anatomical changes in claimant's spine.

¶ 16        According to Dr. Kube's deposition, he relied solely upon claimant's reported history and symptoms. He acknowledged, to a reasonable degree of medical and surgical certainty, he could not state that the March 2015 MRI revealed any change at L5-S1 from the anatomy that existed prior to the reported incident. He said claimant "might" have experienced a spasm had he aggravated the degenerative disc condition. Dr. Kube acknowledged that the emergency room records did not reveal any positive objective clinical finding. And, Dr. Pena's report from March 3, 2015, noted no objective finding to suggest a strain or sprain and no palpable spasm was detected. Dr. Kube stated the July 2015 fusion was based upon claimant's complaints of symptomatology.

¶ 17        On cross-examination, without objection, claimant acknowledged his prior workers' compensation claims. He testified his 2001 back surgery with Dr. Dinh was the result of a work-related accident. Claimant received a workers' compensation settlement in the amount of

$102,143.86. Claimant began work for Independent Mechanical in 2003 and suffered another accident in November 2003 causing injury to his back and hip. He received a workers' compensation settlement in the amount of $55,000. In February 2008, claimant was working for Hammond Custodian, Inc. when he slipped on the ice and injured his shoulder. Claimant also had a cervical fusion in 2008 performed by Dr. Emilio Nardone. He received a workers' compensation settlement in the amount of $50,000. Counsel asked if claimant recalled suffering a work-related accident in May 2009 while working for Power Maintenance Constructors and receiving a settlement of over $100,000. Claimant said he did not recall. Claimant acknowledged that, prior to starting work with Keystone in April 2013, he was off work for the six months prior.

¶ 18        According to claimant, at the time of his March 2, 2015, incident, Pagan was walking about five feet in front of him. In his accident report, claimant stated there was a witness to his fall. However, claimant admitted if Pagan was in front of him, he could not have witnessed the fall. He also agreed that any medical records which indicated that he had stated that Pagan caught him as he fell were inaccurate. He acknowledged that such a scenario was impossible because Pagan was in front of him.

¶ 19        Keystone called its witness Robert Barker, the senior safety and health specialist, who testified that he met with claimant the morning of the incident in the medical office. Claimant denied tripping over anything and suggested he may have had hydraulic fluid on the bottom of his shoes. According to Barker, claimant did not appear to be in any pain, distress, or discomfort until the nurse approached him and asked him his pain level. Barker thought claimant responded with a "pretty high" number, "like eight or nine." Barker said claimant then grabbed his back and said his back hurt. Barker said, "you could tell by the face that he made, you know, so I noticed a difference in his voice." He said he noticed "a dramatic change" in his physical portrayal of his condition in

the presence of the nurse.

¶ 20      Barker said he observed the area where the incident occurred, and he did not observe any ice in the area. He said he spoke with Pagan several weeks after the incident but found no "evidence that would support [Pagan] having witnessed [claimant] fall." On cross-examination, Barker said when he observed the area of the incident, "[i]t was cold." He denied seeing any ruts.

¶ 21      On November 15, 2016, after considering the evidence presented, the arbitrator filed a written decision concluding claimant "did not sustain an accidental injury arising out of and in the course of his employment for [Keystone] on March 2, 2015." In support of this conclusion, he found claimant's "credibility to be suspect" based on (1) numerous inconsistencies in claimant's version of the event, (2) the lack of objective medical evidence of any injury, and (3) claimant's "significant history of sustaining work-related injuries" and his receipt of monetary settlements. Claimant did not object to the arbitrator's consideration of these prior monetary settlements. The arbitrator denied claimant's claim.

¶ 22      On September 28, 2018, the Commission affirmed and adopted the arbitrator's decision in full, with one commissioner filing a special concurring opinion "to further expand on the analysis." She noted neither party called Pagan as a witness. She agreed with the arbitrator's assessment that claimant "was not credible" and Barker was credible. She found there was "simply no hazard present. [Claimant] may have slipped, but there [was] no credible evidence it was caused by an employment risk or hazard."

¶ 23      On August 8, 2019, the circuit court of Peoria County confirmed the Commission. This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25      On appeal, claimant argues that the Commission's decision that claimant failed to

sufficiently prove he suffered an injury arising out of and in the course of his employment was against the manifest weight of the evidence. Specifically, claimant argues that, although he is uncertain about the cause of his fall, referring to it as "unexplained," it nevertheless occurred on Keystone's premises in an area inaccessible to the public "when he was walking to and from outbuildings within a self-contained factory setting and should be compensable."

¶ 26 To obtain compensation under the Act, a claimant bears the burden of showing by a preponderance of the evidence that he has suffered an accidental injury that "arose out of" and "in the course of" his employment. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203 (2003). The requirement that the injury arise out of the employment concerns the origin or cause of the claimant's injury. *Id.* The occurrence of an accident at the claimant's workplace does not automatically establish the injury arose out of the claimant's employment. *Parro v. Industrial Comm'n*, 167 Ill. 2d 385, 393 (1995).

¶ 27 Whether a claimant suffered a work-related accident is a question of fact for the Commission to determine. *Westin Hotel v. Industrial Comm'n*, 372 Ill. App. 3d 527, 538 (2007). It is within the exclusive purview of the Commission to assess the credibility of witnesses, draw reasonable inferences from the evidence, determine the weight to be given to evidence, and resolve conflicts arising from the evidence. *Shafer v. Illinois Workers' Compensation Comm'n*, 2011 IL App (4th) 100505WC, ¶ 38. A factual finding by the Commission will not be set aside unless it is against the manifest weight of the evidence. *Weyer v. Illinois Workers' Compensation Comm'n*, 387 Ill. App. 3d 297, 310 (2008). A finding of fact is against the manifest weight of the evidence when the opposite conclusion is clearly apparent. *Tower Automotive v. Illinois Workers' Compensation Comm'n*, 407 Ill. App. 3d 427, 434-35 (2011). The appropriate test is whether the record contains sufficient evidence to support the Commission's decision, not whether this court

might have reached the same conclusion. *Metropolitan Water Reclamation District of Greater Chicago v. Illinois Workers' Compensation Comm'n*, 407 Ill. App. 3d 1010, 1013 (2011).

¶ 28    Applying these standards, we cannot say that the Commission's decision was against the manifest weight of the evidence. While the claimant maintains that he credibly testified that he suffered a work-related accident on March 2, 2015, the Commission, in affirming and adopting the arbitrator's decision, discounted his testimony for several reasons.

¶ 29    First, the Commission found claimant's account of the details of the incident were inconsistent. He told Dr. Pena he slipped on the ice and twisted his back. He told Morrow at Prairie Spine he slipped on the ice and Pagan caught him. He told Barker he slipped on hydraulic fluid and Pagan witnessed him slipping. He testified at the arbitration hearing he slipped as he walked in the frozen tire ruts and "potholes of ice." He also testified that, at the time he slipped, Pagan was approximately five feet in front of him and thus, he acknowledged, Pagan could not have caught him, nor did he witness the incident. Further, Barker testified he observed the area soon after the incident and found no ruts or accumulation of ice.

¶ 30    Second, the Commission found no treating provider was of the opinion, nor had any observed, that there existed any objective findings to support claimant's complaint of pain or accidental injury. Indeed, Dr. Kube admitted he performed the surgery based wholly on claimant's subjective complaints, as he had found no objective findings during his physical or clinical examination.

¶ 31    Third, the Commission found claimant's "significant history" of sustaining work-related injuries suggested his testimony was suspect. The Commission discounted claimant's credibility. Even assuming the *arbitrator* improperly relied upon evidence of claimant's receipt of prior monetary settlements, there is no suggestion in the record that such evidence materially

- 10 -

affected the *Commission's* decision. See *County of Cook v. Industrial Comm'n*, 177 Ill. App. 3d 264, 273-74 (1988) (finding a presumption the Commission considered only proper and competent evidence).

¶ 32 After reviewing the record, we find ample support for the Commission's findings. Although claimant argues that conflicting evidence was presented on the issue, such evidence comes solely from claimant's self-serving statements. There existed no objective evidence in the record that would support claimant's position that he slipped and sustained an injury. He asserts in his brief that "[a]ll medical histories and accident reports, as well as trial testimony, point to the fact that the [claimant] sustained a slip and twist while walking in an area not accessible to the general public." The medical histories, accident reports, and testimony to which he refers rely only on *claimant's* version of the event. In other words, claimant claims he sustained a work-related accident and resulting injury because he says so. Such is insufficient to support any award of benefits.

¶ 33 Rather, the claimant has the burden of proving by competent evidence that, not only the accident happened, but that the accident was the proximate cause of the condition of incapacity from which he suffered. *American Smelting & Refining Co. v. Industrial Comm'n*, 353 Ill. 324, 328 (1933). The Commission reasonably determined that claimant failed to meet his burden of proof where there was a lack of corroborating evidence to support his testimony. As stated previously, in resolving questions of fact, it is within the province of the Commission to assess the credibility of witnesses, resolve conflicts in the evidence, assign weight to be accorded the evidence, and draw reasonable inferences from the evidence. *Shafer*, 2011 IL App (4th) 100505WC, ¶ 38. Thus, we cannot say the Commission's finding was against the manifest weight of the evidence.

¶ 34                                    III. CONCLUSION

¶ 35        For the reasons stated, we affirm the circuit court's judgment, which confirmed the

Commission's decision.

¶ 36        Affirmed.